## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | | |
|---|---|---|
| **SCOTT M. DAVIS, Jr.** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **vs.** | ) | **Case No:** |
| | ) | |
| **STANLEY PAYNE, Warden,** | ) | |
| **Eastern Reception, Diagnostic and** | ) | |
| **Correctional Center,** | ) | |
| | ) | |
| **Respondent.** | ) | |

## PETITION UNDER 28 U.S.C. § 2254 FOR WRIT OF
## HABEAS CORPUS BY A PERSON IN STATE CUSTODY

COMES NOW petitioner Scott M. Davis, Jr. (hereafter petitioner) by and through counsel, and submits to this Court his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

### Procedural Background

A jury convicted petitioner on September 14, 2013, of first-degree assault (Count 1),  armed criminal action (Count 2), and first-degree assault of a law enforcement officer (Count 3) in St. Charles County Circuit Court Cause No. 1211-CR01984-01 (11th Judicial Circuit).  On November 18, 2013, the trial court sentenced petitioner to ten years' imprisonment on Count 1; five years'

imprisonment on  Count 2; and fifteen  years' imprisonment on Count 3.  The court

ordered that the sentence in Count 2 run concurrently to the sentence in Count 1,

and that the sentence in Count 3 run concurrently to the sentence in Count 2, but

consecutively to the sentence in Count 1, for an aggregate sentence of twenty-five

years' imprisonment.   Petitioner's convictions and sentences were affirmed on

direct appeal. *See State v. Scott,* No. ED100795 (Mo. App. E.D. 2015).   The

Missouri Court of Appeals denied petitioner's subsequent petition for rehearing

and/or transfer.  *Id.*  Petitioner filed an application for transfer in the Missouri

Supreme Court which was denied on November 24, 2016.  *See State v. Davis,* No.

SC95326 (Mo. 2015).   The court of appeals's mandate issued on November 30,

2016.

On February 29, 2016, petitioners filed a timely *pro se* motion for

post-conviction relief pursuant to Missouri Supreme Court Rule 29.15, that was

amended by appointed counsel.  *See Davis v. State*, No. 1611-CC00180  (11th

Judicial Circuit).  The motion court denied the amended petition without an

evidentiary hearing and found that the sentence and judgment contained a clerical

error.  The judgment denying petitioner's amended motion was affirmed on appeal.

*See Davis v. State*, 527 S.W.3d 889 (Mo. App. E.D. 2017).  The appellate court's

mandate issued on October 4, 2017.

Petitioner has no proceedings challenging his convictions and sentences

currently pending in any state or federal court.

## Factual Background

The facts relevant to each stage of the case are summarized below.

Additional facts are included in the sections concerning the grounds for relief.

### *Trial.*

The Missouri Court of Appeals summarized the evidence presented at trial

most favorably to the State as follows:

> On April 17, 2012, Catherine Naber (Naber) drove Appellant and his stepbrother, Elijah Daniel (Daniel), to Appellant's father's home. On the way, Naber gave Appellant and Daniel some LSD that someone had given her at a party.

> Later that evening, Appellant suddenly attacked Daniel and Naber tried to intervene. Appellant's father came out of a back bedroom and helped get Appellant off Daniel. After the attack, Naber went down the hall to the bathroom and called her husband. When Naber returned to the living room, they tried to calm Appellant down. Appellant had taken off his clothes, was making "random statements," and was holding a club with metal spikes. Appellant told Naber, "You're next," pinned her down on the couch, and hit her with the club. Naber managed to get the club away from Appellant and ran to the bathroom.

> Naber eventually left the bathroom and called 911. While in the living room looking for her glasses and keys, Appellant became remorseful and helped her clean up. Appellant said something about his sister being raped and his cousin getting killed. Naber ran out of a side door, locked herself in her van, and called her husband and 911

again.

Officer Tom Kenyon (Kenyon) was dispatched to the home around 2:00 a.m.  When Kenyon arrived, he saw a van backing out of the driveway and Appellant, naked, who appeared to be climbing through the driver's side window. Kenyon blocked the van with his patrol vehicle and got out. Appellant walked to the front of the van.

Kenyon tried to talk to Appellant, but Appellant was speaking "gibberish." Appellant had blood on his upper torso and arms and said his name was "Lucifer." Appellant charged Kenyon, who stepped to the side to avoid contact with Appellant.  Kenyon drew his Taser and fired it at Appellant, hitting Appellant in the chest. Appellant stated, "A Taser? That's all you f***in' got?"

Appellant charged Kenyon again and Kenyon attempted to tase him. Instead of hitting Appellant, Kenyon came into contact with the deployed wires and tased himself.  Appellant grabbed Kenyon's wrist and drove the Taser into Kenyon's nose before Kenyon was able to throw the Taser into the street.

During the altercation, Appellant said he was going to "eat" Kenyon, and bit Kenyon on the left cheek and the right ear. Kenyon punched Appellant in the head and Appellant threatened to kill Kenyon. As the men struggled, Kenyon tripped and fell on his back and Appellant fell on top of him. Kenyon tried to stand up but Appellant hit, choked, and head-butted him. At one point, Kenyon felt Appellant's arm near his holster.  Kenyon attempted to radio for help and Appellant bit Kenyon's elbow.

One witness testified to seeing Appellant on top of Kenyon, "pounding him in the face" and reaching for Kenyon's gun. Another witness testified she saw Appellant standing over Kenyon, swinging at him six or seven times, and that Kenyon seemed "defenseless."

-4-

Kenyon got to his knees but was "[v]ery light headed" and was having difficulty breathing. Kenyon secured the retention strap to his weapon and felt Appellant tugging on it. Appellant began choking Kenyon and Kenyon drew his weapon and fired. Appellant got off of Kenyon and Kenyon stood up, at which time Appellant charged Kenyon, Kenyon fired his weapon, and Appellant fell to the ground.

When additional officers arrived at the scene, they found Appellant sitting on the ground, covered in blood, rocking back and forth, and "speaking in tongues." Officers had to tase Appellant twice before they could subdue him and take him into custody. Appellant, who had been shot twice, was taken to the hospital for medical care. Kenyon was treated at the hospital and required surgery on his left shoulder. Kenyon lost some use of his left arm and was placed on light duty for seven or eight months. Naber was left with multiple scars and suffered a broken jaw, which required surgery and her jaw wired shut for seven weeks.

Appellant was interviewed twice at the hospital. Appellant admitted taking LSD, said he was confused about the events that night and that he had believed his sister had been raped by Daniel. Appellant stated he knew Kenyon was a police officer and that he charged the officer, tried to bite him, and tried to get shot by the officer. Evidence of Appellant's telephone calls made from jail was also admitted at trial. In those calls, Appellant stated Naber had not forced the LSD "down [his] throat" and that he had attacked Kenyon. Appellant's DNA was found on the Taser, the grip of the club, and Kenyon's firearm.

*State v. Davis*, 474 S.W.3d 179, 184-185 (Mo. App. E.D. 2015).

-5-

***Direct Appeal.***

Petitioner filed a timely notice of appeal.  Petitioner raised ten points of trial court error on appeal.  Specifically, petitioner argued that the trial court erred when it: (1) failed to instruct the jury on second degree assault as to Count 1; (2) sustained the State's objection as evidence regarding Officer Kenyon's prior misconduct and use of force; (3) overruled defense counsel's objection to Officer Keny's testimony regarding military service; (4) denied petitioner's motion for new trial based on newly discovered evidence; (5) overruled defense counsel's objections to testimony regarding petitioner's YouTube rap video played during the penalty phase; (6) overruled defense counsel's objection to testimony regarding an attack on petitioner's stepbrother a photo of his stepbrother; (7) overruled defense counsel's objection to the introduction of a thank you card from Catherine Naber to Officer Kenyon; (8)  overruled defense counsel's objection to the prosecutor's closing argument; (9) sentenced petitioner to consecutive sentences of ten years for assault in the first degree and fifteen years for assault of a law enforcement officer; and (10) failed to instruct the jury during the prosecutor's closing argument that they were not to consider whether petitioner's sentences should run concurrently or consecutively.   As stated above, the Missouri Court of Appeals affirmed petitioner's convictions and sentences. *See Scott,* 474 S.W.3d. 179.

***Postconviction proceedings.***

Petitioner timely filed a *pro se* postconviction motion under Rule 29.15. Subsequently, the motion court appointed petitioner counsel who filed an amended postconviction motion.[1]  In his amended motion, petitioner raised three grounds for relief alleging that trial and appellate counsel were ineffective for: (1) failing to adequately investigate the defense of diminished capacity;(2) failing to object at the sentencing stage,  and raise on appeal, that the State improperly elicited information regarding Gail Daniel's prior conviction that went beyond merely nature, date, place of crime, and sentence; and (3) failing to object to the trial court's written judgment.

The motion court denied petitioner an evidentiary hearing.  In its Findings of Fact and Conclusions of Law, the motion court denied petitioner's claims regarding failure to present a diminished capacity defense and the questioning of petitioner's mother as to her prior criminal history.  The motion court did find, however, that the judgment and sentence contained a clerical error and entered a *nunc pro tunc* order correcting it. The judgment denying petitioner's amended motion was

---

[1]Because appointed counsel failed to file the amended motion within the applicable time-frame, petitioner sought an order from the motion court finding that the amended motion was timely.  The motion court granted the motion.

affirmed on appeal.  *See Scott v. State*, 527 S.W.3d 889 (Mo. App. E.D. 2017).

The appellate court's mandate issued on October 4, 2017.

Petitioner has no proceedings challenging his convictions and sentences

currently pending in any state or federal court.

## Grounds for Relief

I.      **Trial Court Error**

*Ground One: Petitioner was denied his rights to due process of law and to*

*be tried only for the crime which he was charged under the Fourteenth*

*Amendment to the United States Constitution when the trial court overruled his*

*objections to testimony regarding his YouTube rap video.*

*Supporting facts*: In opening statement, the prosecutor told the jury that:

> [y]ou'll hear an officer who has watched a You Tube [sic] video of the
> defendant. This is prior to the incident, ladies and gentlemen. I guess
> he's an aspiring wrapper [sic]. It's about a eight or nine minute rap
> video. And during this rap, he says, and I'm trying to be as close as I
> can, but I'm Lucifer awakened. We've heard that before. I'm a demon. I'm a dragon slayer. A

(Tr. 162-163). [2]  During his direct-examination, Detective Buchanan, who

interrogated petitioner, testified that he had reviewed a YouTube video of petitioner

which he described as "sort of a freestyle rap" containing statements "strikingly

---

[2]Petitioner will cite to the state court appellate records as follows:  the trial
transcript as "(Tr.)," the direct appeal legal file as "(L.F.)," the direct appeal brief as
"(App. Br.)" and the postconviction appeal legal file as "(PCR L.F.)."

similar" to petitioner's statements at the hospital – referencing demons and being a dragon and breathing fire, as well as Satan and Lucifer and biting people.  (Tr. 503-504).  Defense counsel had previously sought to exclude this evidence and made a timely objection to it that was overruled.  In closing the prosecutor referenced the video again: "So now he's got to start playing this crazy defense. So now he's Lucifer. Well, where have we heard that before? The You Tube video. He likes to refer to himself as Lucifer awakening; Satan."  (Tr. 735).

Petitioner argued on appeal that the evidence was not particulary relevant to whether he committed the charged offenses, and was actually propensity evidence that was highly prejudicial.  (App. Br. 52-54).   In denying this point on appeal, the Missouri Court of Appeals held that the trial court did not err in allowing Detective Buchanan's testimony regarding petitioner's statements in the rap video as it was relevant to his consciousness of guilt, in that the similarities between the video and petitioner's police statements could support a finding that the petitioner fabricated aspects of the incident to the police to appear less culpable.  *State v. Davis*, 474 S.W.3d at 190.  The court of appeals also found there was no prejudice in the admittance of this evidence as there was overwhelming evidence of guilty.  *Id.*

Although the State will argue in its response that an evidentiary ruling cannot be a basis for federal habeas relief, such a claim is not prohibited whereas state court's error in interpreting or applying its own law has rendered the trial that convicted the defendant so fundamentally unfair as to have deprived the defendant of substantive due process in violation of the U.S. Constitution. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). This is the case at hand. Detective Buchanan should never have been allowed to testify as to petitioner's YouTube rap video because it deprived petitioner of a fundamentally fair trial.

Where the state court has adjudicated a constitutional claim on the merits, a petitioner must demonstrate that the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law."  28 U.S.C. § 2254(d)(1).  Alternatively, petitioner can demonstrate that the state court proceedings "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented."  28 U.S.C. § 2254(d)(2).

The Missouri Court of Appeals' decision was contrary to and an unreasonable application of Supreme Court precedent as well as an unreasonable determination of the facts on the record.  The trial court's admittance of this testimony violated due process because it deprived petitioner of a

-10-

fundamentally fair trial. *See Estelle*, 502 U.S. 62.

The writ must issue, and petitioner is entitled to a new trial.

## II.     Ineffective Assistance of  Counsel

***Ground Two: Petitioner was denied his rights to due process and effective assistance of counsel under the Sixth and Fourteenth Amendments to the United States Constitution when trial counsel failed to adequately investigate and raise a claim of diminished capacity.***

***Supporting facts:*** In his amended Rule 29.15 motion, petitioner argued that he had received ineffective assistance of counsel when his trial counsel failed to adequately investigate the defense of diminished capacity.   But for defense counsel's deficient performance, there is a reasonable probability that the jury would have returned verdicts of second-degree assault for Count 1 and second-degree assault of a law enforcement officer for Count 4.  (PCR L.F. 21-27).

In 2011, petitioner was hospitalized in St. Joseph's Hospitals in Wentzville and St. Charles, Missouri.  While there, he was diagnosed with a psychotic disorder and was prescribed antipsychotic medications, including Risperdal. Despite knowing about petitioner's 2011 hospitalization, trial counsel did not reasonably investigate the defense of diminished capacity.   Although trial counsel had petitioner psychologically examined, she did not provide the examiner with

petitioner's 2011 medical records.   Had counsel procured the services of a forensic psychiatrist experienced with addiction, and would have provided that expert with petitioner's 2011 hospital records, there is a reasonable probability that a diminished-capacity defense could have been developed for the petitioner.

Reviewing courts must analyze claims of ineffectiveness of trial counsel under the familiar test of *Strickland v. Washington*, 466 U.S. 668 (1984). To prevail on a claim of ineffective assistance of counsel, a defendant must show that trial counsel failed to exercise the customary skill and diligence of a reasonably competent attorney under similar circumstances, and that counsel's deficient performance prejudiced him. *Id.* at 687-688. The necessary prejudice is shown where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

The motion court denied this claim without an evidentiary hearing finding that: (1) trial counsel's strategy to pursue a burden of proof defense was sound; (2) in the court ordered psychiatric examination, petitioner was determined to be competent to proceed in his own defense, and did not have a mental disease or defect that caused him not to be responsible for his conduct; (3) trial counsel had

petitioner psychiatrically examined privately; and (4) the report from the court-ordered examination had referenced the 2011 incident when petitioner had become violent after ingesting LSD. (PCR L.F. 45-47).

In addressing this claim on appeal, the Missouri Court of Appeals found that the motion court's findings were not clearly erroneous. Specifically, the appeals court found that because Dr. Scott (the psychologist who performed the court-ordered examination) had already determined that petitioner did not suffer from a mental disease or defect, petitioner could not raise a diminished capacity defense and could not show how further investigation would have been helpful. *Scott v. State,* No. ED104905, Memo., Sept. 12, 2017, pp. 9-10 (Mo. App. E.D.).

Where the state court has adjudicated a constitutional claim on the merits, a petitioner must demonstrate that the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law." 28 U.S.C. § 2254(d)(1). Alternatively, petitioner can demonstrate that the state court proceedings "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented." 28 U.S.C. § 2254(d)(2).

The decision of the Missouri Court of Appeals was contrary to or involved an unreasonable application of clearly established federal constitutional law.

-13-

*See e.g. Strickland v. Washington*, 466 U.S. 668 (1984).   Trial counsel was ineffective because her decision to pursue a burden of proof defense was made without having done a thorough investigation of the diminished capacity defense. Accordingly, her decision to not pursue such a defense could not have been strategic. The court of appeals's' decision was also based upon an unreasonable determination of the facts.  The court of appeals's factual findings were unreasonable because the post-conviction court held no evidentiary hearing as to this ground for relief.  Because no evidentiary hearing was held, defense counsel did not testify as to her investigation into a diminished capacity defense and whether Dr. Scott had been provided records from the 2011 hospitalization. Moreover, the Court of Appeals's factual finding that Dr. Scott's evaluation made any further investigation into a diminished capacity defense unnecessary was unreasonable.  Petitioner alleged that Dr. Scott was not making a fully informed evaluation because he lacked crucial medical records due to trial counsel's ineffectiveness. Accordingly, this Court should hold an evidentiary hearing as to this ground for relief so that the record can be further developed.

Given that evidence exists that on the night of the incident and leading up to it, petitioner suffered from a mental disease or defect and not just a voluntarily hallucinogen-induced drug state, trial counsel's failure to properly investigate a

diminished capacity defense was deficient.  A reasonably competent attorney in similar circumstances would have done so.  There is a reasonable probability that the result of the trial would have been different if trial counsel had done so.

This Court should issue the writ and vacate petitioner's convictions and sentences.

**Ground Three: Petitioner was denied his rights to a fair trial, an impartial jury, and effective assistance of counsel under the Sixth and Fourteenth Amendments to the United States Constitution when trial counsel failed to object to the prosecutor's assistant playing the 911 calls to the jury outside the presence of the trial judge and attorneys.**

**Supporting facts:**  During closing argument, defense counsel implored the jury to listen to the 911 calls and dispatch tapes together.  (Tr. 749).  During its deliberations, the jury asked to listen to the calls.  There was, however, no audio equipment in the jury room.  An off the record discussion transpired in which the prosecutor proposed that his own assistant - who had been sitting at counsel table the entire trial - take her laptop into the jury room and play the recordings for the jury.  Trial counsel acquiesced to this proposal without an objection.  The prosecutor's assistant remained in the jury room for an extended period of time.  Neither the attorneys for the State nor the defendant nor the trial judge were present

during the playing of this evidence.  Again, trial counsel never objected to or made a record as to this arrangement.

Petitioner has a Sixth Amendment right to an impartial jury and justice demands that jurors "decide the case solely on the evidence" before them, without any outside influence. *United States v. Olano*, 507 U.S. 725, 738 (1993). The mere presence of the prosecutor's assistant in the jury room alone was improper because it exposed the jury to an external influence that was likely to prejudice the jury in their deliberation.  *See Turner v. Louisiana*, 379 U.S. 466, 467-68, (1965) (comingling of jury and key witnesses for the prosecution during sequestration); *Parker v. Gladden*, 385 U.S. 363, 87 S. Ct. 468, 17 L. Ed. 2d 420 (1966) (bailiff's assertion to jurors that defendant was "wicked" and "guilty").  The prosecutor's assistant influenced the jury to the benefit of the State when she played them the 911 calls outside the presence of the court and attorneys because she was singled out as "trustworthy" to enter the private realm of the jury room during deliberations. *See United States v. Pittman*, 449 F.2d 1284, 1286 (9th Cir. 1971) (per curiam) (applying *Turner*).  The impact of the prosecutor's assistant's presence  cannot be accurately measured or even ascertained and a new trial is warranted.

A reasonably competent attorney in similar circumstances would not have agreed to the prosecutor's assistant being allowed to enter the jury room and play

recordings to the jury. *Strickland,* 466 U.S. at 687-688.  Counsel had no strategic or other reason not to object to the assistants presence in the jury room.  Counsel's deficient performance prejudiced petitioner.  *Id.*  But for counsel's deficient performance, either the court would have found another method of playing the recordings to the jury which did not violate petitioner's constitutional rights or petitioner would have received a new trial.  Instead, because of counsel's ineffective performance, the prosecutor's assistant entered the jury room depriving petitioner of an impartial trial.   *Strickland*, 466 U.S. at 694.

This issue has not been raised in state court. This failure occurred because of the ineffective assistance of petitioner's post-conviction counsel. Should the State assert that this ground is not available for review, petitioner will argue that under *Martinez v. Ryan*, 566 U.S. 1 (2012), he is entitled to develop and present this ground for relief in this court.  The writ must issue, discovery and an evidentiary hearing will be necessary, and upon a hearing, petitioner is entitled to his convictions to be vacated.

This Court should issue the writ and vacate petitioner's convictions and sentences.

***Ground Four: Petitioner was denied his rights to due process and effective assistance of counsel under the Fifth, Sixth and Fourteenth Amendments to the United States Constitution when trial counsel failed to adequately investigate the jail phone call petitioner made to his mother after his arrest which would have supported his defense of diminished capacity.***

***Supporting facts:*** After petitioner was arrested and hospitalized, he was held at the St. Charles County Jail. Petitioner made a jail call to his mother five days after his arrest informing her that "I just want to make it stop. I don't know which voices to listen to." Although petitioner informed trial counsel of the existence of this phone conversation, on and information and belief she failed to obtain this call and provide it to any of the experts who conducted a mental evaluation. Reasonably competent counsel in similar circumstance would have obtained this telephone call. *Strickland*, 466 U.S. at 687-688. As argued in Ground 2, *supra,* but for counsel's deficient performance, there is a reasonable probability that a diminished capacity defense could have been developed resulting in the jury returning verdicts of second-degree assault for Count 1 and second-degree assault of a law enforcement officer for Count 4.

This issue has not been raised in state court. This failure occurred because of the ineffective assistance of petitioner's post-conviction counsel. Should the State assert that this ground is not available for review, petitioner will argue that under *Martinez*, 566 U.S. 1, he is entitled to develop and present this ground for relief in this court.  The writ must issue, discovery and an evidentiary hearing will be necessary, and upon a hearing, petitioner is entitled to his convictions to be vacated.

This Court should issue the writ and vacate petitioner's convictions and sentences.

## CONCLUSION

For the foregoing reasons, petitioner Scott M. Davis, Jr. prays this Court will grant and issue a writ of habeas corpus in this case directing the respondent to show cause why he should not be released from his unlawful conviction and sentence; to conduct such hearing as may be necessary to determine the issues presented in this petition; and upon hearing, to grant him relief from his conviction and sentence as requested in this petition, and for such other relief in law and equity to which he may show himself justly entitled.

Respectfully submitted,

LAW & SCHRIENER, LLC

*/s/Kevin Schriener*
KEVIN L. SCHRIENER, 35490MO
141 North Meramec Avenue, Suite 314
Clayton, Missouri  63105
(314) 721-7095 – telephone
(314) 863-7096 – facsimile
kschriener@SchrienerLaw.com – e-mail

Attorney for the Petitioner