UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| SCOTT M. DAVIS, JR., | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) Case No. 4:18-cv-01534-SEP |
| | ) |
| STANLEY PAYNE, | ) |
| | ) |
| Respondent. | ) |

## MEMORANDUM AND ORDER

Before the Court is Petitioner Scott M. Davis, Jr.'s petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Doc. [1]. For the reasons set forth below, petition will be denied.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

Petitioner is an inmate at the Eastern Reception, Diagnostic, and Correctional Center in Mineral Point, Missouri. A jury convicted Petitioner of first-degree assault, armed criminal action, and first-degree assault of a law enforcement officer. He was sentenced to 10 years' imprisonment for first-degree assault, 5 years' imprisonment for armed criminal action, and 15 years' imprisonment for first-degree assault of a law enforcement officer. The trial court ordered the 5-year sentence for armed criminal action to run concurrently to the 10-year sentence for first-degree assault and the 15-year sentence for first-degree assault of a law enforcement officer to run consecutive to the 10-year sentence—in total, 25 years.

On direct appeal, the Missouri Court of Appeals summarized the facts as follows:

On April 17, 2012, Catherine Naber (Naber) drove [Petitioner] and his stepbrother, Elijah Daniel (Daniel), to [Petitioner's] father's home. On the way, Naber gave [Petitioner] and Daniel some LSD that someone had given her at a party.

Later that evening, [Petitioner] suddenly attacked Daniel and Naber tried to intervene. [Petitioner's] father came out of a back bedroom and helped get [Petitioner] off Daniel. After the attack, Naber went down the hall to the bathroom and called her husband. When Naber returned to the living room, they tried to calm [Petitioner] down. [Petitioner] had taken off his clothes, was making "random statements," and was holding a club with metal spikes. [Petitioner] told Naber, "You're next," pinned her down on the couch, and hit her with the club. Naber managed to get the club away from [Petitioner] and ran to the bathroom.

Naber eventually left the bathroom and called 911.  While in the living room looking for her glasses and keys, [Petitioner] became remorseful and helped her clean up.  [Petitioner] said something about his sister being raped and his cousin getting killed.  Naber ran out of a side door, locked herself in her van, and called her husband and 911 again.

Officer Tom Kenyon (Kenyon) was dispatched to the home around 2:00 a.m.  When Kenyon arrived, he saw a van backing out of the driveway and [Petitioner], naked, who appeared to be climbing through the driver's side window.  Kenyon blocked the van with his patrol vehicle and got out.  [Petitioner] walked to the front of the van.

Kenyon tried to talk to [Petitioner], but [Petitioner] was speaking "gibberish."  [Petitioner] had blood on his upper torso and arms and said his name was "Lucifer."  [Petitioner] charged Kenyon, who stepped to the side to avoid contact with [Petitioner].  Kenyon drew his Taser and fired it at [Petitioner], hitting [Petitioner] in the chest. [Petitioner] stated, "A Taser? That's all you f***in' got?"

[Petitioner] charged Kenyon again and Kenyon attempted to tase him.  Instead of hitting [Petitioner], Kenyon came into contact with the deployed wires and tased himself.  [Petitioner] grabbed Kenyon's wrist and drove the Taser into Kenyon's nose before Kenyon was able to throw the Taser into the street.

During the altercation, [Petitioner] said he was going to "eat" Kenyon, and bit Kenyon on the left cheek and the right ear.  Kenyon punched [Petitioner] in the head and [Petitioner] threatened to kill Kenyon.  As the men struggled, Kenyon tripped and fell on his back and [Petitioner] fell on top of him.  Kenyon tried to stand up but [Petitioner] hit, choked, and head-butted him.  At one point, Kenyon felt [Petitioner's] arm near his holster. Kenyon attempted to radio for help and [Petitioner] bit Kenyon's elbow.

One witness testified to seeing [Petitioner]on top of Kenyon, "pounding him in the face" and reaching for Kenyon's gun.  Another witness testified she saw [Petitioner] standing over Kenyon, swinging at him six or seven times, and that Kenyon seemed "defenseless."

Kenyon got to his knees but was "[v]ery light headed" and was having difficulty breathing.  Kenyon secured the retention strap to his weapon and felt [Petitioner] tugging on it.  [Petitioner] began choking Kenyon and Kenyon drew his weapon and fired.  [Petitioner] got off of Kenyon and Kenyon stood up, at which time [Petitioner] charged Kenyon, Kenyon fired his weapon, and [Petitioner] fell to the ground.

When additional officers arrived at the scene, they found [Petitioner] sitting on the ground, covered in blood, rocking back and forth, and "speaking in tongues."  Officers had to tase [Petitioner] twice before they could subdue him and take him into custody.  [Petitioner], who had been shot twice, was taken to the hospital for medical care.  Kenyon was treated at the hospital and required surgery on his left shoulder.  Kenyon lost some use of his left arm and was placed on light duty for seven or eight months.  Naber was left with multiple scars and suffered a broken jaw, which required surgery and her jaw wired shut for seven weeks.

> [Petitioner] was interviewed twice at the hospital.  [Petitioner] admitted
> taking LSD, said he was confused about the events that night and that he had
> believed his sister had been raped by Daniel.  [Petitioner] stated he knew Kenyon
> was a police officer and that he charged the officer, tried to bite him, and tried to
> get shot by the officer.  Evidence of [Petitioner's] telephone calls made from jail
> was also admitted at trial.  In those calls, [Petitioner] stated Naber had not forced
> the LSD "down [his] throat" and that he had attacked Kenyon.  [Petitioner's]
> DNA was found on the Taser, the grip of the club, and Kenyon's firearm.

Resp't. Ex. E at 1-4.

Petitioner's convictions and sentences were affirmed on direct appeal.  Resp't Ex. E. Petitioner then filed a *pro se* Rule 29.15 motion for post-conviction relief, after which counsel was appointed for his state court post-conviction proceedings.  Resp't. Ex. G.  Petitioner's appointed counsel filed a timely amended Rule 29.15 motion seeking relief on grounds that (1) his trial counsel was ineffective in failing to adequately investigate the defense of diminished capacity; and (2) his trial and appellate counsel were ineffective for failing to object to or raise a claim on appeal challenging the penalty-phase cross-examination of his mother as to her prior criminal history.  *Id*.  The motion court denied the amended petition without an evidentiary hearing, and the Missouri Court of Appeals affirmed the motion court's decision.  Resp't. Ex. I.

Petitioner then filed the instant petition, in which he raises four claims for habeas corpus relief, including (1) the trial court violated his due process rights under *Estelle v. McGuire*, 502 U.S. 62 (1991), by overruling his objections to certain testimony regarding a YouTube rap video; (2) trial counsel was ineffective in failing to investigate and raise a claim of diminished capacity; (3) trial counsel was ineffective in failing to object to the prosecutor's assistant playing the 911 calls to the jury outside the presence of the judge and attorneys; and (4) trial counsel was ineffective in failing to investigate a phone call Petitioner made to his mother after his arrest which would have supported his diminished capacity defense.  Respondent argues that (1) the petition is untimely; (2) two of his claims were raised in state court and adjudicated in a way that was reasonable and entitled to deference; (3) two of his claims were not raised in state court and are, therefore, procedurally defaulted; and (4) each of his claims is meritless.

## II.   LEGAL STANDARD

A federal judge may issue a writ of habeas corpus freeing a state prisoner if the prisoner is "in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  The judge must not issue a writ, however, if an adequate and independent state-law

ground justified the prisoner's detention, regardless of the federal claim.  *See Wainwright v. Sykes*, 433 U.S. 72, 81-82 (1977).

"Federal habeas review exists as 'a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal.'"  *Woods v. Donald*, 575 U.S. 312, 316 (2015) (per curiam) (quoting *Harrington v. Richter*, 562 U.S. 86, 102-03 (2011)).  Accordingly, "[i]n the habeas setting, a federal court is bound by [the Antiterrorism and Effective Death Penalty Act (AEDPA)] to exercise only limited and deferential review of underlying state court decisions."  *Lomholt v. Iowa*, 327 F.3d 748, 751 (8th Cir. 2003) (citing 28 U.S.C. § 2254).  Under AEDPA, a federal court shall not grant relief to a state prisoner with respect to any claim that was adjudicated on the merits in the state court proceedings unless the state court's adjudication of the claim "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).

A state court decision is "contrary to" clearly established Supreme Court precedent "if the state court arrives at a conclusion opposite to that reached by [the United States Supreme] Court on a question of law or if the state court decides a case differently than [the United States Supreme] Court has on a set of materially indistinguishable facts."  *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).  "[A] state court decision involves an unreasonable determination of the facts in light of the evidence presented in the state court proceedings only if it is shown that the state court's presumptively correct factual findings do not enjoy support in the record."  *Jones v. Luebbers*, 359 F.3d 1005, 1011 (8th Cir. 2004) (citations and internal quotation marks omitted); *see also Rice v. Collins*, 546 U.S. 333, 338-39 (2006) (petitioner can rebut by clear and convincing evidence presumption that state court factual findings are correct).

III.  DISCUSSION

a.  Timeliness

To be considered timely under AEDPA, a petitioner is required to file any petition for writ of habeas corpus within one year after the conclusion of direct review in state court, with such time being tolled during the pendency of a post-conviction motion or other application for collateral relief in state court.  28 U.S.C. § 2244(d)(1)(A), (2).  Under Missouri state court

procedures, post-conviction relief proceedings pend until the issuance of a mandate. *Payne v. Kemna*, 441 F.3d 570, 572 (8th Cir. 2006) (citing *Williams v. Blumer*, 763 S.W.2d 242, 245 (Mo. Ct. App. 1988)).

Petitioner filed his petition for a writ of habeas corpus on September 11, 2018. According to Respondent, the Missouri Court of Appeals "denied post-conviction relief and issued its mandate on September 12, 2017." Doc. [12] at 8. Respondent argues, therefore, that Petitioner's petition was untimely, as 370 days had passed between the completion of direct review and the filing of the Petition, after accounting for the tolling of the statute of limitations during state appellate review. Upon review of the state court docket, the Court finds that the Missouri Court of Appeals actually issued its mandate on October 4, 2017—22 days later. Doc. [12-11] at 1. As a result, fewer than 365 days passed between the completion of direct review and the filing of this Petition, less the time of pendency of the state appellate review, and the petition is timely.

### b.  Ground One:  Admission of Testimony Violated Right to Due Process

In Ground One, Petitioner contends that the trial court improperly overruled his objection to the admission of Detective Buchanan's testimony about one of Petitioner's YouTube rap videos. During trial, Detective Buchanan, who spoke to Petitioner after his arrest, testified that Petitioner stated during his interview that he had taken LSD the night of the assault, after which he "kind of . . . blacked out" and saw demons. Resp't Ex. A at 575-76; Resp't Ex. E at 13. Detective Buchanan also testified that Petitioner stated that he "turned into a dragon" who was "biting heads off and breathing fire" and referred to himself as "Lucifer" and "Satan." Resp't Ex. A at 575. During closing arguments, Petitioner's trial counsel referred to Petitioner's statements, suggesting they indicated that he may have been detached from reality during the assault, and therefore less culpable. Resp't Ex. A at 834. However, Detective Buchanan also testified that he had reviewed a YouTube rap video by Petitioner, recorded before the assault, in which he made statements that were 'strikingly similar" to statements Petitioner made at the hospital, including references to demons, being a dragon, breathing fire, Satan, Lucifer, and biting people. *Id.* at 575.

Petitioner's trial counsel objected to the admission of Detective Buchanan's testimony regarding the rap video, asserting that it was highly prejudicial and irrelevant. The prosecution argued that the evidence was relevant to Petitioner's motivation, intent, and knowledge of the

5

crime, as the video statements showed that he had previously talked about similar matters before the night of the crime.  The trial court overruled Petitioner's objection, admitting the testimony. Petitioner argues that admitting the testimony about the rap video rendered his trial fundamentally unfair, thus violating his right to due process.  Doc. [1] at 10-11.

In a § 2254 habeas corpus proceeding, a federal court's review of alleged due process violations stemming from a state court conviction is exceedingly narrow.  *Anderson v. Goeke*, 44 F.3d 675, 679 (8th Cir. 1995).  "In the habeas context, rules of evidence and trial procedure are usually matters of state law." *Bucklew v. Luebbers*, 436 F.3d, 1010, 1018 (8th Cir. 2006).  "It is not the province of a federal habeas court to reexamine state court determinations on state law questions." *Estelle*, 502 U.S. at 67.  Therefore, the admissibility of evidence at trial is ordinarily a matter of state law and "will not form the basis for federal habeas relief." *Turner v. Armontrout*, 845 F.2d 165, 169 (8th Cir. 1988) (citing *Manning–El v. Wyrick*, 738 F.2d 321, 322 (8th Cir.), *cert. denied*, 469 U.S. 919 (1984)); *see also Nebinger v. Ault*, 208 F.3d 695, 697 (8th Cir. 2000) ("Rulings on the evidence in state trials rarely rise to the level of a federal constitutional violation.").

"A federal court may, however, grant habeas relief when a state court's evidentiary ruling . . . is so prejudicial that it amounts to a denial of due process." *Turner*, 845 F.2d at 169. Accordingly, reversal of a state court evidentiary ruling is appropriate only if "the petitioner . . . shows that the alleged improprieties were 'so egregious that they fatally infected the proceedings and rendered his entire trial fundamentally unfair.'" *Anderson*, 44 F.3d at 679 (internal citation omitted).  To carry that burden, the petitioner must show that the purported error affected the outcome of the trial—namely, "that absent the alleged impropriety the verdict probably would have been different." *Id.*  In making this determination, the federal habeas court "must review the totality of the facts in the case and analyze the fairness of the particular trial under consideration." *Hobbs v. Lockhart*, 791 F.2d 125, 128 (8th Cir. 1986).  "No due process violation [exists], even if the evidence was erroneously admitted, if other evidence of guilt is so overwhelming that the error is harmless." *Wedemann v. Solem*, 826 F.2d 766, 767 (8th Cir. 1987) (citing *Hobbs v. Lockhart*, 791 F.2d 125, 127-28 (8th Cir. 1986)).

During trial, the defense made a timely objection to the admittance of Detective Buchanan's testimony regarding Petitioner's YouTube rap video, which was overruled.  On direct appeal, the Missouri Court of Appeals found that the testimony regarding the video was

relevant because it indicated consciousness of guilt, and its admission was proper.  Resp't Ex. E at 13.  More specifically, the court found that the similarities between Petitioner's statements in the video and his statements to the police supported the State's claim that he fabricated his statements to the police about hallucinating demons and being Lucifer in order to appear less culpable.  The court also found that, in light of "the overwhelming evidence against" Petitioner, it "cannot be said that this limited testimony was so prejudicial that it deprived [Petitioner] of a fair trial." *Id*. at 13-14.  Petitioner now claims that the state appellate court violated his right to due process by affirming the admittance of Detective Buchanan's testimony about Petitioner's YouTube rap video, as its admittance was so prejudicial as to undermine the fundamental fairness of his trial.

Even if this Court were to accept Petitioner's claim that the state evidentiary ruling was in error, and it is making no such determination, it is important to note that not every trial court error amounts to a constitutional deprivation.  Here, Petitioner has failed to meet his burden of showing that the admission of Detective Buchanan's testimony was so prejudicial that it rendered his trial fundamentally unfair, especially considering the other evidence against him.  The state court reasonably found that there was overwhelming evidence of Petitioner's guilt— Petitioner admitted that he knew Officer Kenyon was a police officer and that he tried to charge at him and bite him.  Also, in a phone call made from jail, Petitioner stated that he had attacked Officer Kenyon.  Additionally, multiple eyewitnesses testified to Petitioner's actions.  This evidence, in combination with Petitioner's DNA found on the club grip and Kenyon's firearm and taser, leads the Court to conclude that even if Detective Buchanan's testimony had been excluded, it is not probable that the result of the trial would have been different.  *See Wedemann*, 826 F.2d at 767 ("No due process violation [exists], even if the evidence was erroneously admitted, if other evidence of guilt is so overwhelming that the error is harmless.").

Petitioner has not shown that the Missouri Court of Appeals's rejection of this claim was contrary to federal law or based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  Therefore, the Court defers to the state court's adjudication and Ground One is denied.

### c.  Ineffective Assistance of Counsel

Petitioner, in Grounds Two through Four, alleges claims of ineffective assistance of counsel.  Petitioner claims that his trial counsel was ineffective in (1) failing to adequately

investigate and raise a claim of diminished capacity; (2) failing to object to the prosecutor's assistant playing a recording of the 911 calls to the jury outside the presence of the judge and attorneys; and (3) failing to adequately investigate a phone call Petitioner made to his mother after his arrest, which Petitioner alleges would have supported his defense of diminished capacity.

Ground Two was addressed by the state court in Petitioner's post-conviction proceedings; Grounds Three and Four, however, were not raised by Petitioner in his state post-conviction motion and are thus procedurally defaulted unless he can demonstrate that such default should be excused. Petitioner argues that his default should be excused under the *Martinez* exception, pursuant to which the ineffectiveness of post-conviction counsel may provide "cause" to excuse a defaulted claim for ineffective assistance of trial counsel in certain circumstances. *Martinez v. Ryan*, 566 U.S. 1, 9 (2012). As further discussed below, this Court concludes that the Missouri court's resolution of Petitioner's ineffective assistance claim asserted in Ground Two reflects a reasonable application of federal law and is thus entitled to deference. The Court further concludes that Petitioner has not shown cause and prejudice sufficient to overcome his procedural default of his ineffective assistance claims in Grounds Three and Four.

The Sixth Amendment guarantees a criminal the right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). To show ineffective assistance of counsel, Petitioner must show both that "[his] counsel's performance was deficient" and that "the deficient performance prejudiced [his] defense." *Id.* at 687; *see also Paulson v. Newton Corr. Facility*, 773 F.3d 901, 904 (8th Cir. 2014); *Worthington v. Roper*, 631 F.3d 487, 498 (8th Cir. 2011). To show deficient performance, Petitioner must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the [Petitioner] by the Sixth Amendment." *Strickland*, 466 U.S. at 687. "Judicial scrutiny of counsel's performance must be highly deferential," and Petitioner bears a heavy burden in overcoming "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" and "might be considered sound trial strategy." *Id.* at 689 (citation and internal quotation marks omitted). To show prejudice, Petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

When an ineffective assistance claim has been addressed by the state court, this Court must bear in mind that, "[t]aken together, AEDPA and *Strickland* establish a 'doubly deferential standard' of review." *Williams v. Roper*, 695 F.3d 825, 831 (8th Cir. 2012) (quoting *Cullen v. Pinholster*, 563 U.S. 170, 202 (2011)).  In the context of a habeas claim, it is not sufficient for a petitioner to "show that he would have satisfied *Strickland*'s test if his claim were being analyzed in the first instance." *Bell v. Cone*, 535 U.S. 685, 698-99 (2002).  "Rather, he must show that the [state court] applied *Strickland* to the facts of his case in an objectively unreasonable manner." *Id.* at 699.  "This standard was meant to be difficult to meet, and 'even a strong case for relief does not mean the state court's contrary conclusion was unreasonable.'" *Williams*, 695 F.3d at 831 (quoting *Harrington v. Richter*, 562 U.S. 86, 102 (2011).  "If the state court reasonably could have concluded that [the petitioner] was not prejudiced by counsel's actions, then federal review under AEDPA is at an end." *Id.* at 832 (internal quotation marks omitted).

## i.  Ground Two:  Failure To Adequately Investigate Diminished Capacity Defense

Petitioner contends he was denied effective assistance of counsel when his trial counsel failed to adequately investigate the defense of diminished capacity.  In 2011, Petitioner was hospitalized in St. Joseph's, where he was diagnosed with a psychotic disorder and prescribed Risperdal.  Doc. [1] at 11.  Petitioner claims that even though trial counsel had him psychologically examined prior to trial, she erred by failing to provide the court-appointed psychiatric examiner, Dr. Richard Scott, with Petitioner's 2011 hospital records.  Petitioner also claims that trial counsel erred by failing to procure the services of an additional forensic psychiatrist more experienced with addiction, and that had she done so, there is a reasonable probability that Petitioner would have been able to present a successful defense of diminished capacity.

Petitioner raised this claim in his post-conviction Rule 29.15 motion, and after the motion court denied the claim, he appealed that decision to the Missouri Court of Appeals.  The Missouri Court of Appeals, applying the *Strickland* standard, agreed with the motion court and denied Petitioner's claim as follows:

Petitioner alleged he was hospitalized in 2011, and as a result, he was diagnosed with a psychotic disorder.[1]  Despite having this knowledge, Petitioner alleged, trial counsel did not reasonably investigate a diminished capacity defense because she did not obtain the services of Dr. Melissa Piasecki, a forensic psychiatrist experienced with addiction, or another expert in the same field, and trial counsel did not provide such expert with Petitioner's 2011 hospital records. . . . Petitioner alleged he was prejudiced by trial counsel's failure to investigate because if the jury was presented with a diminished capacity defense, the jury would have found Petitioner could not have knowingly assaulted Naber or Officer Kenyon.

In denying Petitioner's claim, the motion court first found that trial counsel chose the defense Petitioner was not guilty because the State failed to meet its burden of proof, a defense which the motion court found trial counsel effectively presented based on its review of the underlying record.  Second, the motion court found Petitioner's trial counsel did request a psychiatric exam, in which Dr. [Richard] Scott from the State of Missouri Department of Mental Health on November 13, 2012, found Petitioner not only to be competent to stand trial, but further that he had no mental disorder that could qualify as a mental disease or defect.  Third, trial counsel's decision not to call a private psychiatric doctor as a witness was a matter of trial strategy, which was virtually unchallengeable, and that trial counsel was not obligated to shop for an expert who may provide a more favorable opinion.  Fourth, the court determined trial counsel's decision to pursue one defense over another was sound trial strategy since Petitioner was found not to have a mental disease or defect.  And finally, the motion court found that Petitioner's amended motion also said that if the expert [post-conviction counsel] found in Nevada would have been called using Petitioner's medical records from a previous incident in 2011, [ ] the results would have been different.  This fails since this [witness's] testimony would be based upon a diminished capacity defense, and Dr. Scott in the psychiatric exam referenced this 2011 incident Petitioner [references in] his claim.  Dr. Scott's medical findings were that Petitioner was without any mental disease or defect. Without a mental disease or defect there would be no grounds to argue diminished capacity.

Based on our review of the record, the motion court's findings are not clearly erroneous.  The record indicates that, inter alia, trial counsel filed a notice of intent to rely on the defense of mental disease or defect.  The trial court ordered Petitioner to undergo a mental examination with Dr. Scott, and a copy of Dr. Scott's report was filed with the court.  Although this report was not made a part of the record on appeal, Petitioner has failed to dispute the motion court's summary of its findings that, (1) Petitioner was not only competent to stand trial, but he had no mental disorder that could qualify as a mental disease or defect; and (2) Dr. Scott was aware of and referred to the 2011 hospitalization that Petitioner now claims trial counsel failed to investigate.  Because Dr. Scott had

---

[1] Petitioner testified to the motion court that this psychotic disorder was a "chemically induced psychosis" caused by his ingestion of liquid LSD.  Resp't Ex. I at 9.

already determined Petitioner had no mental disease or defect so as to support a diminished capacity defense, Petitioner has failed to show how any investigation beyond what trial counsel completed would have produced helpful information in support of that defense.   Although trial counsel could have consulted additional experts in the hope of finding one who might support a diminished capacity defense, counsel was not required to do so.   Counsel was entitled to instead pursue other defense strategies.

In light of the foregoing, the bare conclusions asserted in Petitioner's amended motion are insufficient to leave this Court with a definite and firm impression the motion court erred in determining trial counsel's actions in ultimately pursuing a defense of not guilty rather than diminished capacity were matters of trial strategy.   Accordingly, the motion court did not clearly err in denying Petitioner's claim that trial counsel was ineffective for failing to investigate the defense of diminished capacity without an evidentiary hearing.   Point one is denied.

Resp't. Ex. I at 9-11 (internal citations omitted) (cleaned up and internal references to "Movant" changed to "Petitioner" for the sake of clarity).

This Court must indulge a "strong presumption" that defense counsel's conduct fell within the range of reasonable representation.   *Strickland*, 466 U.S. at 689.   After reviewing the relevant portions of the record with that standard in mind, the undersigned finds that it contains ample support for the conclusions of the Missouri Court of Appeals.

Petitioner has not shown that his attorney's performance was deficient, nor that the outcome of his case would have been affected in any meaningful way if counsel had pursued further investigation on this point.   Dr. Scott's report referenced the 2011 hospitalization, indicating that he clearly knew about the incident, yet still found that Petitioner had no mental disorder that could qualify as a mental disease or defect and that he was competent to stand trial. It was reasonable for counsel to rely on Dr. Scott's conclusions.   As noted by the Missouri Court of Appeals, Petitioner's counsel could have chosen to seek another, more favorable opinion, but she was not required to do so.   "Counsel is not required to 'continue looking for experts just because the one [s]he has consulted gave an unfavorable opinion.'"   *Walls v. Bowersox*, 151 F.3d 827, 835 (8th Cir. 1998) (quoting *Sidebottom v. Delo*, 46 F.3d 744, 753 (8th Cir. 1995)).

On this record, the Court cannot say that the Missouri court applied *Strickland* unreasonably; nor was its decision an "unreasonable determination of the facts in light of the evidence presented in state court."   *Cole v. Roper*, 623 F.3d 1183, 1187 (8th Cir. 2010); 28 U.S.C. § 2254(d).   Accordingly, the Court will deny habeas relief on Petitioner's claim in Ground Two.

### ii.  **Procedurally Defaulted Claims**

Respondent asserts that Petitioner procedurally defaulted his Grounds Three and Four.
Before seeking federal relief under the AEDPA, a petitioner must fairly present his claims to the
appropriate state courts during direct appeal or in post-conviction proceedings to give the state
courts a fair opportunity to apply controlling legal principles to the facts bearing on the claim.
*Wemark v. Iowa*, 322 F.3d 1018, 1020-21 (8th Cir. 2003); *Sweet v. Delo*, 125 F.3d 1144, 1149
(8th Cir. 1997); *see also* 28 U.S.C. § 2254(c).  A claim has been fairly presented when a
petitioner has properly raised the same factual grounds and legal theories in the state courts that
he is attempting to raise in his federal petition.  *Wemark*, 322 F.3d at 1021.  Claims that have not
been fairly presented to the state courts are procedurally defaulted and may not generally give
rise to habeas relief.  *Id.* at 1022 (quoting *Gray v. Netherland*, 518 U.S. 152, 161-62 (1996)).  *See
also Grass v. Reitz*, 643 F.3d 579, 584 (8th Cir. 2011) (If a petitioner has not previously
presented the substance of a habeas claim and has no available procedure for doing so because he
has defaulted with respect to legitimate state requirements, federal courts are barred from
considering such a ground for habeas relief).

Under Missouri law, claims of ineffective assistance of counsel must be raised in a
motion for post-conviction relief pursuant to Missouri Supreme Court Rule 29.15.  *See* Mo. Sup.
Ct. R. 29.15(a).  Petitioner admits that Grounds Three and Four for relief are procedurally
defaulted because they were not presented to the state court.  *See Interiano v. Dormire,* 471 F.3d
854, 856 (8th Cir. 2006) (An ineffective assistance of counsel claim is procedurally defaulted if a
petitioner fails to raise it in a Rule 29.15 motion or fails to raise it in the appeal from the denial
of such a motion.).

Where a petitioner procedurally defaulted his claims in state court, "federal habeas
review of the claims is barred unless the prisoner can demonstrate cause for the default and
actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to
consider the claims will result in a fundamental miscarriage of justice."  *Murphy v. King*, 652
F.3d 845,849 (8th Cir. 2011) (citing *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)).  "[T]he
existence of cause for a procedural default must ordinarily turn on whether the prisoner can show
that some objective factor external to the defense impeded counsel's efforts to comply with the
State's procedural rule."  *Id.* (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)).  Prejudice in
this context requires the petitioner to show that the alleged errors "worked to his actual and

12

substantial disadvantage." *Ivy v. Caspari*, 173 F.3d 1136, 1141 (8th Cir. 1999) (emphasis in original); *see also Arnold v. Dormire*, 675 F.3d 1082, 1087 (8th Cir. 2012).  Here, the standard of prejudice "is higher than that required to establish ineffective assistance of counsel under *Strickland*."  *Charron v. Gammon*, 69 F.3d 851, 858 (8th Cir. 1995). To invoke the fundamental miscarriage of justice exception to the procedural default rule, a petitioner must present new evidence that affirmatively demonstrates that he is innocent of the crime for which he was convicted.  *Abdi v. Hatch*, 450 F.3d 334, 338 (8th Cir. 2006).

Here, Petitioner contends that his default of Grounds Three and Four is due to the ineffectiveness of his post-conviction counsel, which he asserts establishes "cause" for the default, and he is thus entitled to develop and present these grounds for relief.  "Ineffective assistance of state postconviction counsel does not usually provide cause for a procedural default, except for one 'narrow exception.'" *Deck v. Jennings*, 978 F.3d 578, 582 (8th Cir. 2020) (citing *Coleman v. Thompson*, 501 U.S. 772, 755 (1991), and *Martinez*, 566 U.S. at 9).  In *Martinez*, the Supreme Court held that ineffective assistance of post-conviction counsel can provide "cause" to excuse a defaulted ineffective assistance of trial counsel claim where (1) the claim of ineffective assistance of trial counsel was a "substantial" claim, and (2) the "cause" consisted of there being "no counsel" or only "ineffective" counsel during the state collateral review proceeding.[2]  *See Harris v. Wallace*, 984 F.3d 641, 648 (8th Cir. 2021) (citations omitted).  Petitioner claims that his situation falls within that narrow exception, and that his default should be excused under *Martinez*.

To satisfy the *Martinez* exception, Petitioner must show, then, "that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the [petitioner] must demonstrate that the claim has some merit."  *Martinez*, 566 U.S. at 14.  Petitioner must also show that counsel in his state post-conviction proceeding was ineffective under the standards of *Strickland*. *Id.*  To demonstrate "merit," Petitioner must show, as with any ineffective assistance of counsel claim, that trial counsel's performance fell below an

---

[2]  The *Martinez* exception has a third element:  that the state collateral review proceeding was the "initial" review with respect to ineffective assistance claims.  *Martinez*, 566 U.S at 9.  This element is satisfied because Missouri does not allow ineffective assistance claims to be raised on direct appeal and requires that they be raised in post-conviction proceedings.  *See* Mo. Sup. Ct. R. 29.15 (stating that "Rule 29.15 provides the exclusive procedure by which such person may seek relief in the sentencing court" for ineffective assistance of trial counsel).

objective standard of reasonableness and that he was prejudiced by such failure.  *Strickland*, 466 U.S. at 687-88.

Therefore, if Petitioner can demonstrate both that his post-conviction counsel was ineffective *and* that the underlying defaulted claim of ineffectiveness of trial counsel is meritorious, then he has demonstrated cause excusing the procedural default of his ineffectiveness assistance of trial counsel claims asserted in Grounds Three and Four.  As further discussed below, he has not met this standard, and this Court may not grant relief on the same.

### 1.   *Ground Three:  Trial Counsel's Failure to Object to Prosecutor's Assistant Playing 911 Calls in Jury Room*

During closing arguments, defense counsel "implored" the jury to listen to the 911 calls and dispatch tapes from the night of the incident.  Doc. [1] at 15.  During deliberations, the jury asked to listen to the calls, but there was no audio equipment in the jury room.  In an off-the-record conversation, the prosecutor proposed that his assistant take her laptop into the jury room and play the recordings for the jury.  Defense counsel did not object to this proposal, and the prosecutor's assistant entered the jury room and played the recordings.  Neither Petitioner's attorney, the attorneys for the state, nor the judge were present when these calls were played.

Petitioner claims, in Ground Three, that the "mere presence" of the prosecutor's assistant in the jury room violated his Sixth Amendment right to an impartial jury.  He asserts that this arrangement influenced the jury to the State's benefit, as the assistant was "singled out as trustworthy to enter the private realm of the jury room," and a competent attorney would not have allowed such an intrusion.  Doc. [1] at 16.  Thus, Petitioner contends that his trial counsel was ineffective for failing to object to the prosecutor's assistant playing the 911 calls for the jury, and that his post-conviction counsel was ineffective for failing to raise the claim during post-conviction review.  Petitioner further asserts that the impact of the assistant's presence "cannot be accurately measured or even ascertained and a new trial is warranted."  *Id*.

The Supreme Court has made clear that "a jury's verdict "must be based [only] upon the evidence developed at the trial."  *See Irvin v. Dowd,* 366 U.S. 717, 722 (1961); *see also Turner v. Louisiana,* 379 U.S. 466, 472–73 (1965) ("trial by jury in a criminal case necessarily implies at the very least that the 'evidence developed' against a defendant shall come from the witness stand in a public courtroom where there is full judicial protection of the defendant's right of confrontation, of cross-examination, and of counsel").  Furthermore, it is a "cardinal principle"

that the deliberations of the jury should remain private. *United States v. Olano*, 507 U.S. 725, 737 (1993) (citing Advisory Committee's Notes on Fed. Rule Crim. Proc. 23(b)). However, "the primary, if not exclusive, purpose of jury privacy and secrecy is to protect the jury's deliberations from improper or extraneous influence," so "if no harm resulted" from an intrusion into the jury room, then such intrusion will not undermine the jury's decision. *Id*. at 737-738.

To warrant relief on such a claim, a habeas petitioner must prove that the jury's exposure to extraneous or improper influence was prejudicial. *Helmig v. Kemna,* 461 F.3d 960, 963 (8th Cir. 2006); *see also Olano*, 507 U.S. at 737-38 (if "no harm resulted" from an improper extraneous influence, then "reversal would be pointless."). "In a habeas case, if there is sufficient proof that [a juror] was improperly exposed to extraneous information, the court must determine on the basis of objective factors whether the information was prejudicial." *Id.* at 965. Prejudice is shown if there is a "reasonable probability" that a reasonable juror would have reached a different verdict had he not been exposed to the extraneous influence. *Id.* at 966; *see also Vigil,* 298 F.3d at 940 (stating that "in the habeas corpus context, a federal court may grant relief only where the alleged misconduct had substantial and injurious effect or influence" on a juror's deliberations) (citation omitted). In this matter, the Court concludes that the prosecutor's assistant's presence in the jury room had no prejudicial impact on Petitioner.

In support of his argument, Petitioner points to cases where the Court found an outside influence on the jury was prejudicial. For example, Petitioner cites to *Turner v. Louisiana*, 379 U.S. 466, 467-68 (1965), where the prosecution's principal witnesses were both deputy sheriffs in the town where petitioner was tried. *Id*. at 468. During the trial, members of the jury were sequestered and "placed in charge of the Sheriff." *Id*. at 467. The jurors were continuously in the company of the deputy sheriffs, who drove them to restaurants, to their lodgings each night, and ran errands for them as needed. *Id*. The Court in *Turner* found this "continuous and intimate association" between the jurors and the deputies was prejudicial to the petitioner because his fate depended on how much confidence the jurors placed in the deputies in their role as key witnesses. *Id*. at 474.

Petitioner also cites to *Parker v. Gladden*, 385 U.S. 363 (1966). In that case, while walking with the jurors outside of the courtroom, a Court bailiff told members of the jury that the defendant was "wicked" and "guilty." *Id*. The Court determined this interaction was prejudicial to the petitioner, as the bailiff's position unquestionably carried great weight with the jury, which

15

he had been shepherding for eight days and nights.  *Id.* at 365.  Additionally, one of the jurors testified that she was prejudiced by the statements.  *Id.*

Here, unlike in *Turner*, the jurors did not have a "continuous and intimate relationship" with the assistant.  379 U.S. at 473.  Also, the position of assistant to the prosecution does not carry as much weight as an official officer of the court and the State, like that of the bailiff in *Parker*.  385 U.S. at 365.  Additionally, unlike the situation in *Parker*, Petitioner does not allege, and there is no evidence in the record to support, that the prosecutor's assistant said anything prejudicial about Petitioner's character or guilt to the jury.  And, although Petitioner alleges the prosecutor's assistant was singled out as trustworthy, there is no evidence that this was the case. Petitioner offers nothing to suggest that it was anything more than a matter of convenience that led to the prosecutor's assistant entering the jury room, as she was the one who had the recordings on her laptop.  Finally, it is important to note that it was defense counsel that implored the jury to listen to the 911 calls and dispatch tapes.  Petitioner's counsel must have believed that having the jury listen to the recordings would be beneficial to his defense, and therefore, having the prosecutor's assistant play the tapes may have *helped* Petitioner.

Petitioner offers nothing more than pure conjecture that the assistant's presence in the jury room prejudiced him in any way; indeed, his argument is that the impact of her presence "cannot be accurately measured or even ascertained."  Bare speculation, absent anything more, is not sufficient to support his claim.  *See Hill v. Lockhart,* 474 U.S. 52, 60 (1985) (district court properly denied habeas relief where petitioner failed to allege sufficient facts to support his ground for relief).  Thus, absent any evidence to the contrary, the Court concludes that there is no reasonable probability that a reasonable juror would have reached a different verdict had the assistant not played the recordings.  Therefore, the Court finds that Petitioner has failed to demonstrate that his underlying ineffectiveness of counsel claim has substantial merit.

Because Petitioner's underlying ineffective assistance of trial counsel claim lacks merit, his post-conviction counsel could not have been ineffective by failing to raise the claim in post-conviction review.  *See Parker v. Bowersox*, 94 F.3d 458, 462 (8th Cir. 1996) ("To perform competently under the Sixth Amendment, counsel is neither required nor even advised to raise every conceivable issue on appeal," but should focus on the most meritorious issues.); *see also Davila v. David*, 137 S. Ct. 2058, 2067 (2017) (On appeal, counsel "should not raise every

16

nonfrivolous argument" but instead should include "only those arguments most likely to succeed." (citation omitted)).

Because Petitioner has not shown "that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one," nor that counsel in his state post-conviction proceeding was ineffective under the standards of *Strickland*, he has failed to satisfy the narrow *Martinez* exception.  *Martinez*, 566 U.S. at 14.  Thus, he cannot establish an excuse for procedurally defaulting this claim, and Ground Three is denied.

### 2.   *Ground Four:  Trial Counsel's Failure to Investigate Prison Phone Call*

Petitioner alleges in Ground Four that trial counsel was ineffective for failing to investigate and provide to Dr. Scott the content of a phone call Petitioner made from prison five days after his arrest.  Petitioner concedes that this claim is defaulted but urges the Court to find such default excused under *Martinez*, arguing that his post-conviction counsel was ineffective for failing to raise this claim during post-conviction review.  Petitioner contends that in the phone call, made to his mother, he said, "I just want to make it stop.  I don't know what voices to listen to."  Doc. [1] at 18.  According to Petitioner, if trial counsel had investigated the call and relayed its contents to Dr. Scott, Dr. Scott would likely have found that Petitioner suffered from a mental disease or defect at the time of the assault.

As discussed above, for the *Martinez* exception to apply, Petitioner must show that his underlying claim for ineffectiveness of trial counsel "is a substantial one, which is to say that the [petitioner] must demonstrate that the claim has some merit."  *Martinez*, 566 U.S. at 14.  To demonstrate "merit," Petitioner must show that trial counsel's performance fell below an objective standard of reasonableness and that he was prejudiced by such failure.  *Strickland*, 466 U.S. at 687-88.  The Court concludes that Petitioner has not met this burden, and thus, cannot satisfy the requirements of *Martinez*.

Without considering whether trial counsel's performance fell below that of an objective standard of reasonableness, the Court finds that Petitioner was not prejudiced by counsel's decision not to investigate the prison phone call.  To satisfy the "prejudice" component of *Strickland*, a petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different, *Strickland*, 466 U.S. at 694.  In determining whether prejudice exists, "a court hearing an ineffectiveness claim

must consider the totality of the evidence." *Id*. at 695.  Here, Petitioner has not met his burden of showing that, had trial counsel investigated the call and relayed its contents to Dr. Scott, the result of the proceeding would have been different.

Dr. Scott, an expert in the field of mental health, found that Petitioner had no mental disorder that could qualify as a mental disease or defect, and that he was competent to stand trial. Dr. Scott based his determination on both an examination of Petitioner and consideration of the details surrounding the 2011 hospitalization.  Petitioner has not provided any facts to show that, had Dr. Scott also been provided with the contents of the prison phone call, he would have concluded that Petitioner suffered from a mental disease or defect at the time of the incident. Petitioner provides no evidence concerning the larger context of the alleged phone call, and indeed, provides no information regarding the call aside from the content of the statement he allegedly made to his mother.  As Respondent argues, Petitioner's alleged comment could have alluded to different advice he was receiving from various individuals.  Petitioner does not provide sufficient factual information to persuade the Court that Dr. Scott's expert opinion would have been different, had he known of the phone call.  *See Hill,* 474 U.S. at 60 (district court properly denied habeas relief where petitioner failed to allege sufficient facts to support his ground for relief).

Because Petitioner cannot establish prejudice resulting from the alleged ineffective assistance of trial counsel, his claim lacks merit and cannot be considered "substantial" under *Martinez*.  566 U.S. at 17.  Accordingly, Petitioner fails to show cause and prejudice for the procedural default of this claim, and Ground Four must be denied.

### d.  Request for Evidentiary Hearing

Finally, Petitioner contends that the Court is required to hold an evidentiary hearing on his claims.  He is mistaken.  Generally, the decision about whether to conduct an evidentiary hearing is within a habeas court's discretion, as limited by statutory restrictions set forth in the AEDPA.  *See Schriro v. Landrigan*, 550 U.S. 465, 473-75 (2007); 28 U.S.C. § 2254(e)(2) (explaining that "the decision to grant an evidentiary hearing" remains within the "sound discretion of district courts").  A federal court, when determining whether a hearing is warranted, should "evaluate whether claims of ineffective-assistance are substantial or potentially meritorious."  *Dansby v. Hobbs*, 766 F.3d 809, 834 (8th Cir. 2014) (internal quotation marks omitted); *see also Schriro*, 550 U.S. at 473.  In addition, a federal habeas court must consider

"the deferential standards" under the AEDPA that "control whether to grant habeas relief." *Id.* at 474.  If the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing.  *Id.*  Because the Court has determined that Petitioner's claims are not substantial or potentially meritorious, the Court does not find that an evidentiary hearing is appropriate.  *Id.* ("Where the allegations underlying a petitioner's contention that his trial counsel was constitutionally ineffective are insufficient to show that he is entitled to federal habeas relief, no evidentiary hearing need be held.").

CONCLUSION

For the foregoing reasons, Petitioner is not entitled to federal habeas relief.  Under 28 U.S.C. § 2253(c)(1)(A), an appeal may not be taken from the final order in a 28 U.S.C. § 2254 proceeding unless a circuit judge or district judge issues a certificate of appealability.  To grant such a certificate, the judge must find that the petitioner "has made a substantial showing of the denial of a constitutional right." *Id.* § 2253(c)(2); *Tiedeman v. Benson*, 122 F.3d 518, 522 (8th Cir. 1997).  "A substantial showing is a showing that issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings." *Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997) (citation omitted).  Here, reasonable jurists could not differ on Petitioner's claim; therefore, the Court will not issue a certificate of appealability.

Accordingly,

**IT IS HEREBY ORDERED** that Petitioner's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 is **DENIED**.

**IT IS FURTHER ORDERED** that this case is **DISMISSED**.

**IT IS FINALLY ORDERED** that no certificate of appealability shall issue.  28 U.S.C. § 2253.

A separate Judgment shall accompany this Memorandum and Order.

Dated this 30th day of September, 2021.

*Sarah E. Pitlyk*

_____

SARAH E. PITLYK
UNITED STATES DISTRICT JUDGE